UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRIS PHILLIPS,

        Plaintiff,

        v.

WORLD PUBLISHING COMPANY, d/b/a THE
TULSA WORLD

        Defendant.

CASE NO. C11-558RSM

ORDER ON MOTION TO DISMISS

      This matter is before the Court for consideration of a motion to dismiss and motion pursuant to RCW 4.24.525 to strike claims, filed by defendant World Publishing Company, Inc., doing business as the Tulsa World ("Tulsa World"). Dkt. # 21. For the reasons set forth below, the motion to dismiss shall be granted, and the motion to strike shall be denied as moot.

FACTUAL BACKGROUND

      Plaintiff Chris Phillips, appearing *pro se*, filed this complaint for defamation and other torts pursuant to the diversity jurisdiction of this Court, asserting that he is a resident of Nova Scotia, Canada, or Massachusetts, that defendant is an Oklahoma corporation, and that the amount in controversy exceeds $75,000. Amended Complaint, Dkt. # 6, ¶¶ 2, 4. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) or (2). This is one of nine such complaints filed by plaintiff regarding events that occurred in March and April 2008, when plaintiff resided in Washington State.[1]

---

[1] *See, Phillips v. Mayes*, C10-2067RSM; *Phillips v. Lomas*, C11-213RSM; *Phillips v. Hearst Corporation*, C11-377RSM; *Phillips v. Fisher Communications Inc.*, C11-378RSM; *Phillips v. KIRO-TV, Inc.*, C11-379-RSM; *Phillips v. World Publishing Company*, C11-558RSM; *Phillips v.*

The complaint alleges that plaintiff, who has both medical (M.D.) and legal (J.D.) degrees, was "a respected LASIK surgeon and ophthalmologist" who practiced medicine in Renton, Washington. Amended Complaint, ¶ 9. He was the owner of, and employed by, Seattle Eye Surgeons, doing business as Lomas LASIK and Eye Care Center. *Id.*, ¶ 10. According to the complaint, on February 29, 2008, plaintiff "temporarily closed Lomas LASIK and Eye Care Center to remodel and restructure the business," and laid off several employees. *Id.*, ¶¶ 18, 19. Shortly after the closure, defendant Tulsa World "negligently began publishing numerous false statements" regarding plaintiff's decision to temporarily close the practice. *Id.*, ¶ 20. These statements, according to plaintiff, included allegations that plaintiff had disappeared, vanished, was missing, and "unexpectedly left town." *Id.*, ¶¶ 25-28. Plaintiff alleges that he had previously informed this defendant that he was in the hospital.[2] *Id.*, ¶ 21. He subsequently informed defendant again of his hospitalization, as did a relative of his. ¶¶ 29-31. Nevertheless, according to plaintiff, this defendant "knowingly continued publishing the above false allegations." *Id.*, ¶ 32. As a result, plaintiff's reputation was damaged, his business was destroyed, and he had to declare bankruptcy, filing for personal bankruptcy on July 2, 2008. *Id.*, ¶¶ 61-62.

On these and other factual allegations, plaintiff asserts various tort claims against the Tulsa World. The causes of action asserted are intentional and negligent infliction of emotional distress (Counts I and II), defamation and defamation per se (Counts III and IV), intentional interference with contractual relations (Count V), interference with a prospective advantage (Count VI), publication in a false light (Count VII) and civil harassment (Count VIII). Defendant has moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint and all counts therein for failure to state a claim.

---

*Newspaper Holdings Inc.*, C11-559RSM; *Phillips v Oklahoma Publishing Company, Inc., et al.*, C11-560RSM; *Phillips v. Seattle Times Company*, C11-561RSM.

[2] Documents filed by plaintiff later in the case indicate that plaintiff was about this time referred to the Menniger Clinic for a Comprehensive Psychiatric Assessment by the Washington State Physician's Health Program. Plaintiff's Response, Dkt. # 26, pp. 35-39. Plaintiff was at the clinic for evaluation from March 3 to March 7, 2008, and returned for treatment from March 22, 2008 to April 18, 2008. *Id.*

Defendant has also moved pursuant to RCW 4.24.525, Washington's "anti-SLAPP" law[3], to strike all claims and to recover the statutory penalty of $10,000. Dkt. # 11. Plaintiff has timely responded to oppose the motion. Dkt. # 26.

DISCUSSION

## I. Rule 12(b)(6) Motion to Dismiss

### A. Legal Standard

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F. 2d 696, 699 (9th Cir. 1990). To sufficiently state a claim and survive a motion to dismiss, the complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or the "formulaic recitation of the elements of a cause of action will not do." *Id*. The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Apart from factual sufficiency, a complaint is also subject to dismissal where it lacks a cognizable legal theory, or where the allegations on their face "show that relief is barred" for some legal reason. *Balistreri*, 901 F. 2d at 699; *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In determining whether to grant a motion to dismiss, the Court must accept as true all "well-pleaded factual allegations" in the complaint. *Iqbal*, 129 S. Ct. at 1950. The Court is not, however, required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001). Nor

---

[3] "SLAPP" in the statutory context is an acronym for Strategic Lawsuits Against Public Participation. In passing RCW 4.24.525, the legislature expressed a concern over lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." RCW 4.24.525, Notes, 2010 c 118. The statute provides for the rapid resolution of a special motion, filed by the defendant, to strike the SLAPP.

is the Court required to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

In general, the Court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion.  However,  material which is properly submitted as part of the complaint may be considered.  *Hal Roach Studios, Inc., v. Richard Feiner & Co.*, 896 F. 2d 1555 n. 19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading,"  may be considered in ruling on a Rule 12(b)(6) motion.  *Branch v. Tunnell*, 14 F. 3d 449, 454 (9th Cir. 1994). Also subject to consideration under Fed.R.Evid. 201 are matters of public record, of which the Court may take judicial notice.  *Mack v. South Bay Beer Distrib.*, 798 F. 2d 1279, 1282 (9th Cir. 1986).

### B.  Defamation Claims

Turning to the allegations in the complaint, and defendant's motion to dismiss them, the Court finds that plaintiff's defamation and "defamation per se" claims fail to state a claim.   The elements of a cause of action for defamation in Washington are (1)  a false statement;  (2)  lack of privilege;  (3)  fault; and (4)  damages.  *Herron v. KING broadcasting Co*., 112 Wash. 2d 762, 768 (1989).   To establish the falsity element, the plaintiff must show the challenged statement was "provably false."  *Schmalenberg v. Tacoma News, Inc.*, 87 Wash. App. 579, 590-91 (1997).  "Expressions of opinion are protected by the First Amendment" and are "not actionable."   *Robel v. Roundup Corp.*, 148 Wash. 2d 35, 55 (2002) (quoting *Camer v. Seattle Post-Intelligencer*, 45 Wash. App. 29, 39 (1986).

The defamatory statements alleged by plaintiff in the Amended Complaint are that he "disappeared," "vanished," "was missing," "unexpectedly left town," "refused to provide any comment," was "unreachable," and that the closure of the medical practice "was a mystery."  Amended

Complaint, Dkt. # 7, ¶¶ 25-28, 34-36.   Nowhere in the complaint has plaintiff alleged when or where

such statements were made, or what statements were actually made by defendant Tulsa World.   His

Amended Complaint is almost an exact copy of complaints he filed against KIRO-TV, the Seattle

Times, and other news sources, and as to the alleged statements, it is identical.   *See*, *Phillips v. KIRO-*

*TV*, C11-379RSM, Dkt. # 4, ¶¶ 25-28, 36-38;  *Phillips v. Seattle Times,*  C11-661RMS, Dkt. # 4, ¶¶ 25-

28, 36-38;  *Phillips v. Newspaper Holdings, Inc., d/b/a The Edmond Sun*, C11-559RSM, Dkt. # 7, ¶¶ 25-

28, 34-36.  Nowhere does plaintiff separately identify the statements allegedly made by the Tulsa World

from the statements allegedly made by KIRO-TV, the Seattle Times, or other media outlets.   His

defamation claim against the Tulsa World fails on this deficiency alone, as such scattershot and

unsubstantiated allegations cannot withstand a motion to dismiss.

The Tulsa World has provided a declaration by general counsel, attaching copies of two articles

about plaintiff that appeared on the website for the Edmond Sun, an Oklahoma newspaper,  on

April 2, 2008, and July 16, 2008.  Declaration of Susan Cashon, Dkt. # 22.  It appears that the stories,

which came from the Associated Press, were picked up by the Tulsa World in Tulsa, Oklahoma, because

of plaintiff's connection with former Olympic gymnast (and Oklahoma native)  Shannon Miller.   The

two were married in a "lavish ceremony" in Oklahoma City in  1999, and later divorced.   *Id*., Exhibit A.

The only statement among the ones that plaintiff lists in his complaint that actually appears in the

article is in the headline of the first article, where it states "Shannon Miller's ex-husband vanishes."  *Id.*

The first sentence of the article then explained that Dr. Phillips was "under investigation after abruptly

closing his suburban business and leaving for parts unknown."  *Id.,* Exhibit A.  These are not actionable

or  false statements;  plaintiff cannot dispute that he did abruptly leave town.   Plaintiff has made this

fact a matter of record by filing a copy of medical records indicating dates when he was hospitalized for

diagnosis and treatment (March 3 to March 7, 2008 and March 22 to April 18, 2008).   Declaration of

Chris Phillips, Dkt. # 43, Exhibit A.   Plaintiff's theory appears to be that the statement that he had "vanished" was false because he informed defendant that he was in the hospital, so defendant knew where he was.  This argument is unavailing.   Even assuming that plaintiff's conclusory and non-specific allegation at ¶ 21 that he notified "defendant" of his hospitalization is true for the Tulsa World, he wholly fails to demonstrate falsity.  It was in the eyes of his patients that plaintiff "vanished" when he abruptly closed his practice without notice to them.

And while plaintiff may dispute the charges against him in the investigation by the State Department of Health, he cannot dispute that it took place, so the mention of it in the article is not a false statement.  Further, although plaintiff points to (unspecified) statements by the Tulsa World as the source of the complaints filed against him by his former patients, this accusation is completely implausible.  Amended Complaint, Dkt. # 6, ¶ 42.  First, plaintiff's practice and his patients were in Renton, Washington, and he has stated no facts which would create an inference that any of his patients ever saw the Tulsa World article.  Second, the article which appeared on the Tulsa World website on April 3, 2008, reported that the investigation was underway as a result of earlier complaints filed by plaintiff's patients after he abruptly closed his practice at the end of February.  Dkt. # 22, Exhibit A. The inescapable inference is that it was plaintiff's abrupt departure, without notice, that led to the complaints, not the Tulsa World's later report of that departure.

As to the second article published by the Tulsa World on its website, plaintiff has not alleged any defamatory statements at all, nor could he.  The brief article, titled "Shannon Miller's Ex-Husband Files for Bankruptcy," simply reported the fact of the bankruptcy filing on July 2, together with the statement that he "closed the business in February without notifying patients." Dkt. # 22, Exhibit A.   These are not false statements and cannot serve as the basis for a defamation claim.

Defamatory meaning may not be imputed to true statements, or to opinion-like characterizations of plaintiff's actions such as that he "vanished." *Lee v. Columbian, Inc.,* 64 Wash. App. 534, 538 (1991); *Robel v. Roundup Corp.*, 148 Wash. 2d at 55. Courts give words their "natural and obvious meaning" and may not extend the language by "innuendo or by the conclusions of the pleader." *Lee*, 64 Wash. App. at 538. The "defamatory character of the language must be apparent from the words themselves." *Id*. Here, the single statement alleged by plaintiff which actually appeared in the Tulsa World, namely that he "vanished," is neither false nor defamatory in character.[4] Defendant's motion to dismiss the defamation claims (Counts III and IV) shall accordingly be GRANTED.

**C. Emotional Distress Claims**

In the absence of a claim for defamation, plaintiff's claim of intentional infliction of emotional distress (outrage) also fails. The elements of the tort of outrage are (1) extreme or outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional distress. *Robel v. Roundup Corp.*, 148 Wash. 2d at 41. The extreme or outrageous conduct alleged here is the alleged defamation, which claim has been dismissed. An emotional distress claim based on the same facts as an unsuccessful defamation claim "cannot survive as an independent cause of action." *Harris v. City of Seattle*, 315 F. Supp. 2d 1105, 1112 (W.D.Wash. 2004); *quoting Leidholdt v. L.F.P. Inc.,* 860 F. 2d 890, 893 n. 4 (9th Cir. 1988). Further, plaintiff has failed to properly allege severe emotional distress. His bare and conclusory allegations at ¶¶ 99-101 of the Amended Complaint that he "became emotionally distressed," that the distress "manifested itself in physical symptoms," and that he "obtained treatment" for his distress and symptoms are a mere "formulaic recitation of the elements of a cause of action, " and in the absence of factual detail are wholly insufficient to state a

---

[4] The article contains other information about plaintiff which may be troubling to him, such as his scheduled appearance in Renton Municipal Court to answer criminal misdemeanor charges related to a party at his home, at which minors were served alcohol. Plaintiff's defamation claim, as alleged, does not include these statements nor, in light of the fact these are matters of public record, could it.

claim. *Bell Atlantic Corp. v. Twombley*, 550 U.S. at 555. Plaintiff's after-the-fact statement in his recently-filed declaration that the physical manifestation of his distress included a loss of thirty pounds in 2008, stomach pain, and nausea is ineffective to cure the pleading defects in the complaint. Declaration of Chris Phillips, Dkt. # 26, ¶ 60.

A claim of negligent infliction of emotional distress requires the plaintiff to prove that he "has suffered emotional distress by objective symptomatology and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Kloepfel v. Boker*, 149 Wash. 2d 192, 197 (2003). As shown above, plaintiff has not alleged in his Amended Complaint any actual symptoms or made any specific allegations regarding his medical diagnosis; he has not gone beyond the mere formulaic recitation that he had unnamed symptoms. Further, the defamation claim that allegedly caused the unidentified symptoms has been dismissed for failure to state a claim. The claims of intentional and negligent infliction of emotional distress (Counts I and II) are therefore also subject to dismissal, and defendant's motion is GRANTED as to these claims.

### D. Interference with Contractual Relations and Prospective Advantage

Plaintiff's claims of intentional interference with contractual relations and interference with a prospective advantage (Counts V and VI) fail because he has again simply recited some of the elements of the torts, without providing any factual detail. He has alleged no facts to support the conclusory allegation that this defendant knew anything of his contractual relationship with Seattle Eye Surgeon, beyond the fact that he was the owner. Moreover, his claim of interference with a prospective advantage, which presumably refers to the intentions stated at ¶¶ 14 and 15 of the amended complaint (stating a desire to obtain employment as an expert witness in the field of medicine) is highly implausible. It is plaintiff's misdemeanor conviction of furnishing alcohol to minors and making false statements to police, a matter of public record of which the Court may take judicial notice, along with

other details provided by plaintiff here,[5] which will undermine his ability to obtain employment as an expert witness in his field, not any statement made by defendant in the article at issue.

For a claim to survive a motion to dismiss, "the non-conclusory factual content, and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F. 3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). Plaintiff's claims at Counts V and VI wholly fail to meet this plausibility standard. Defendant's motion shall accordingly be granted as to Counts V and VI, and these claims are DISMISSED.

### E. False Light

Defendant moves to dismiss plaintiff's false light claim (Count VII) on the basis that Washington law has not recognized such a tort, as well as the argument that plaintiff's false light claim is merely a duplicate of his defamation claim. Plaintiff in response cites a recent case in which a Washington court allowed a false light claim to go to the jury, and the Washington State Court of Appeals found this was not an error. *Corey v. Pierce County*, 154 Wash. App. 752, 761 (2010).

The *Corey* court noted that "[a] false light claim arises when 'someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.'" *Id.*, quoting *Eastwood v. Cascade Broadcasting Co.*, 106 Wash. 2d 466, 470-71 (1986). Further, "like defamation, false light claims require a showing of falsity and knowledge of, or reckless disregard for that falsity." *Id.* Thus defendant is correct that plaintiff's false light claim simply duplicates his defamation claim. Both require a showing of false statements. The Court has determined that plaintiff failed to adequately allege any false statements by the Tulsa World. This

---

[5] See *supra*, note 2. The records from this hospitalization contain diagnoses which would make it very difficult or impossible for plaintiff to obtain employment as an expert witness. Plaintiff has waived his privacy interest in these records by filing them in the record of this case.

determination is dispositive of the false light claim. Defendant's motion to dismiss shall be GRANTED as to Count VII, false light.

### F. Civil Harassment

Plaintiff's final cause of action (Count VIII) is for "civil harassment." Defendant correctly argues that Washington does not recognize a cause of action for damages for civil harassment. The civil harassment statute provides only for "a speedy and inexpensive method of obtaining civil antiharassment protection orders." RCW 10.14.010. Plaintiff has cited to no Washington statute or common law which would provide relief in the form of damages as he requested. Amended Complaint, Dkt. # 4, ¶ 161. Defendant's motion to dismiss shall accordingly be GRANTED as to the civil harassment claim.

### G. Statute of Limitations

In addition to addressing the pleading deficiencies, defendant argues that all of plaintiff's claims were filed outside the applicable statute of limitations, so dismissal should be with prejudice and without leave to amend. The statute of limitations for defamation claims in Washington is two years. RCW 4.16.100. The Oklahoma statute of limitations, should it apply, is even shorter, one year. Okla.Stat.tit. 12 § 95(4). Plaintiff asserts that Washington law determines the statute of limitations. Response to Motion to Dismiss, Dkt. # 26, p. 1. The Court need not analyze which applies, as under either statute plaintiff's claims are time-barred.

Plaintiff argues that the Tulsa World article about him is a "continuing tort" because the article is still available on the internet. Plaintiff cites a single case, *Caughell v. Group Health Cooperative of Puget Sound*, 124 Wash. 2d 217 (1994) for his "continuing tort" argument. That case involves medical malpractice and negligent treatment, and is irrelevant to the issue of internet publication.

Washington courts adopted the "single publication rule" for written and oral (broadcast) publications in 1987, finding that this is "the better reasoned rule in light of the modern realities of mass publication and broadcasts to wide audiences." *Herron v. KING Broadcasting Co*., 109 Wash. 2d 514, 521 (1987). The Ninth Circuit Court of Appeals has explained that, under the single publication rule, " 'any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication.' " *Oja v. U.S. Army corps of Engineers*, 440 F. 3d 1122, 1130 (9th Cir. 2006) (quoting *Restatement (Second) of Torts* § 577A(3) (1977)). Under this rule, "the aggregate communication can give rise to only one cause of action in the jurisdiction where the dissemination occurred," and can "result in only one statute of limitations period that runs from the point at which the original dissemination occurred." *Id*., *citing Zuck v. Interstate Publishing Corp.*, 317 F. 3d 727, 729-30 (2d Cir. 1963). In the internet context, the statute of limitations begins to run when the allegedly infringing material is first posted on the internet. *Canatella v. Van De Kamp*, 486 F. 3d 1128, 1134-36 (9th Cir. 2007). Under this rule, the statute of limitations on plaintiff's defamation claim expired two years after publication of the "vanished" statement, or April 2, 2010.

However, notwithstanding plaintiff's assertion that Washington law applies to his claim, the Ninth Circuit's statement that publication creates "only one cause of action **in the jurisdiction where the dissemination occurred"** suggests that Oklahoma law applies to plaintiff's claims. Plaintiff has failed to assert any basis for expanding the one-year statute of limitations applicable to defamation claims in Oklahoma. The Supreme Court of Oklahoma, in 2011, declined to adopt the single publication rule in a case involving misappropriation of a likeness, and applied the discovery rule instead. *Woods v. Prestwick House, Inc.*, 2011 OK 9, 247 P. 3d 1183 (2011). The court provided an overview of the single-publication rule, the multiple-publication rule, and the discovery rule, and then

stated unequivocally that "Oklahoma follows the discovery rule." *Id*. at 1198 (*quoting Resolution Trust Corp. v. Grant*, 1995 OK 68, 901 P. 2d 807 (1995). The court addressed the rule specifically in the context of defamation cases, noting that the discovery rule applies "in matters where the publication is likely to be concealed from the plaintiff or published in a secretive manner making it unlikely to come to the injured party's attention." *Id*. at 1190, *citing Digital Design Group, Inc., v. Information Builders, Inc.*, 2001 OK 21, 24 P. 3d 834 (2001). In light of the allegations in the Amended Complaint that plaintiff contacted the Tulsa World both before he went into the hospital and while he was there, "plead[ing] with the Defendant that they stop publishing the false statement," he cannot assert that the statement was concealed from him, or published in a secretive manner. *See*, Amended Complaint, Dkt. # 6, ¶¶ 21, 23, 29, 30. He is therefore not entitled to benefit from application of the Oklahoma discovery rule. The Oklahoma one-year statute of limitations for his defamation claim expired on April 2, 2009.

Plaintiff also contends that the Washington statute of limitations was tolled by the automatic stay imposed by 11 U.S.C. § 362(a) during his bankruptcy proceedings. However, such stay applies only to actions **against** the debtor, not to lawsuits brought **by** the debtor. A bankruptcy filing automatically stays any "judicial . . . action or proceeding against the debtor," but not actions or proceedings brought by the debtor. 11 U.S.C. 362 (emphasis added); *Parker v. Bain*, 68 F.3d 1131 (9th Cir.1995); *In re White v. City of Santee*, 186 B.R. 700, 704 (9th Cir.1995) (stay provision inapplicable to "offensive actions by debtor in possession or bankruptcy trustee"); *Polello v. Knapp*, 68 Wn.App. 809, 813, 847 P.2d 20 (1993).

Plaintiff further argues that he was powerless to pursue his claim against the Tulsa World because all his potential lawsuits became the property of the bankruptcy estate. However, the trustee could have asserted this claim on behalf of the estate before the statute of limitations had run. Plaintiff

argues that the trustee could not do so because he was negotiating with the trustee in an attempt to exempt his potential lawsuits from the estate. He has cited no legal authority to support this argument.

## H. Personal Jurisdiction

Finally, although defendant has supported its Rule 12(b)(6) motion with arguments on the deficiencies in plaintiff's pleading, it also argues that the Court lacks personal jurisdiction. Defendant World Publishing Company, owner of the Tulsa World, is a family-owned company based in Tulsa, Oklahoma. Declaration of Susan Cashon, Dkt. # 22, ¶ 2. It has no offices or agents in Washington, and it is not licensed to do business in Washington. *Id.* The article challenged by plaintiff appeared on the website of the Tulsa World, an Oklahoma newspaper. *Id.* Defendant asserts that this single act is insufficient to establish the Court's specific jurisdiction. Plaintiff asserts that the Tulsa World article was specifically aimed at him in Washington, and therefore provides sufficient basis for the Court to exercise jurisdiction. Plaintiff's Response, Dkt. # 26, p. 19.

The general rule is that personal jurisdiction may be exercised over a foreign defendant if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate due process. *Fireman's fund Ins. Co. v. National Bank of Coops.,* 103 F. 3d 888, 893 (9th Cir. 1996). Washington has a long-arm statute. RCW 4.28.185. For due process to be satisfied, a defendant must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, (1945).

Courts of this circuit employ a three-part test to analyze whether a party's "minimum contacts" meet the Supreme Court's directive. This "minimum contacts" test is satisfied when (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum ("purposeful direction" and "purposeful availment"), (2) the claim arises out of or results from the

defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995).

Plaintiff correctly sets forth the elements of the test and argues for application of the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder,* the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis. The courts have referred to this holding as the "Calder effects test." *See, Bancroft & Masters, Inc., v. Augusta National, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000). To satisfy this test the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id*. at 1088 (citing *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998)). However, referring to the *Calder* test simply as an "effects" test can be misleading. For this reason, courts should not focus too narrowly on the test's third prong---the effects prong—because "something more" is needed in addition to a mere foreseeable effect. *Bancroft*, 223 F.3d at 1087. That "something more" is "express aiming." *Id*.

Plaintiff makes a strong argument that naming him in the news article and describing him as a resident of Washington is "express aiming" as that term has been interpreted by the courts. *See*, *Bancroft*, 223 F. 3d at 1087 ("[T]he requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.") However, it is not necessary for the Court to resolve the question of personal jurisdiction, as it has been rendered moot by the dismissal, with prejudice, of plaintiff's claims in their entirety.

## II. **Special Motion to Strike Pursuant to RCW 4.24.525**

The Washington anti-SLAPP law provides, in relevant part, that "[a] party may bring a special motion to strike any claim that is based on an action involving public participation" as defined in the statute. RCW 4.24.525(4)(a). The section applies to "any claim, however characterized, that is based on an action involving public participation and petition." RCW 4.24.525 (2). An act involving public participation includes "[a]ny oral statement made . . . in a place open to the public or a public forum in connection with an issue of public concern" and "other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern . . . " RCW 4.24.525(2) (d) and (e).

An anti-SLAPP law provides relief to a defendant which is in the nature of immunity from suit. *Batzel v. Smith*, 333 F. 3d 1018, 1025 (9th Cir. 2003) (addressing California's anti-SLAPP statute.) In passing the law, the Washington legislature noted a concern regarding lawsuits "brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech" as well as a concern over the chilling effect of "the costs associated with defending such suits." RCW 4.24.525, notes 2010 c 118. The statute accordingly provides for an award of attorneys' fees and costs, plus a statutory award of $10,000, to a defendant who prevails on an anti-SLAPP motion. RCW 4.24.525(6)(a)(i), (ii). Conversely, if the Court finds that the anti-SLAPP motion to strike was frivolous or brought solely to cause unnecessary delay, costs, attorneys' fees, and $10,000 shall be awarded to the opposing party. RCW 4.24.525.(6)(b)(i), (ii). The special motion to strike is therefore not without risk to the moving party.

Defendant filed the anti-SLAPP motion at the same time, and in the same document, as the Rule 12(b)(6) motion, without designating it as a motion in the alternative. Nevertheless, the Court shall

decline to rule on the anti-SLAPP motion, as it has already determined that plaintiff's complaint shall be dismissed in its entirety for failure to state a claim and as time-barred.   Such dismissal shall be without leave to amend, as set forth below.   No claims remain to be stricken pursuant to defendant's motion to strike, so the motion is moot.

Defendant may argue that additional relief is available through the anti-SLAPP motion to strike, including costs, attorneys' fees, and the statutory award of $10,000.   While this amount is significant, it is outweighed by the burden on the parties and the Court of proceeding to consider the motion, because the Court could not do so without first addressing plaintiff's renewed motion for a declaratory judgment on the constitutionality of the Washington anti-SLAPP statute.   Dk.t. # 23.   Defendant could have avoided this result by filing the Rule 12(b)(6) motion first, to be followed by an anti-SLAPP motion only if the Rule 12(b)(6) motion did not fully dispose of the claims.   Instead, the Court shall declare the anti-SLAPP motion moot, as there are no claims remaining to be stricken.

CONCLUSION

Defendant's Rule 12(b)(6) motion to dismiss the complaint and all claims therein (Dkt. # 21)  is GRANTED and the complaint and action are DISMISSED.   Plaintiff shall not have leave to amend, as any amendment would be futile under the statute of limitations applicable to his claims.

Defendant's anti-SLAPP motion to strike plaintiff's claims is DENIED as moot.   All remaining motions filed by plaintiff (Dkt. ## 23, 25, 27, 28) are STRICKEN.

Dated this 14th day of October 2011.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS - 16